**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | |
|---|---|
| **WILLIE PACE,**<br><br>            Plaintiff,<br><br>v.<br><br>**HURST BOILERS & WELDING CO.,**<br><br>            Defendant. | Civil Action 7:10-CV-116 (HL) |

**ORDER**

This case is before the Court on Defendant's Motion for Summary Judgment (Doc. 43). For the reasons discussed herein, the Motion is granted.

**I.    BACKGROUND**

Plaintiff filed a complaint against his former employer, Hurst Boilers & Welding Co., pursuant to Title VII of the Civil Rights Act of 1964, as ameded, 42 U.S.C. § 2000e, *et seq.*, claiming that he was discriminated against because of his race and sex. Plaintiff sought both monetary damages and injunctive relief. Defendant filed a motion to dismiss, and argued that Plaintiff's claims were barred by the doctrine of judicial estoppel, as Plaintiff failed to disclose the discrimination claims as an asset in a bankruptcy filing. The motion to dismiss was converted to a motion for summary judgment under Federal Rule of Civil Procedure 56, and on January 12, 2011, the Court entered an order (Doc. 19) granting, in part, and denying, in part, the motion.

The Court found that Plaintiff's monetary claims were barred by the doctrine of judicial estoppel, but determined that the injunctive relief claims were not barred and would be allowed to go forward. The parties engaged in discovery, and Defendant has now moved for summary judgment on Plaintiff's remaining claims.

## II.   FACTS[1]

In September of 2006, Plaintiff worked for Quality Employment Services, which is an employment agency. (Deposition of Willie F. Pace, pp. 35-36). Quality sent Plaintiff to work for Defendant in October of 2006, and Plaintiff was hired by Defendant in January of 2007. (Pace Dep., p. 36). Plaintiff's initial job was operating a plasma machine. (Pace Dep., pp. 36-37, 42). Plaintiff used the plasma machine to fabricate metal components, which were used to manufacture boilers. (Pace Dep., pp. 42-43).

During the time Plaintiff worked for Defendant, there were two plasma machines. (Pace Dep., p. 46). The machines were operated by Plaintiff, Danny Thomas, Kyle Hiers, John Benefield, and Dwayne Willoughby. (Pace Dep., pp. 48-

---

[1] Plaintiff did not respond to Defendant's Statement of Undisputed Material Facts (Doc. 45) or include any statements of fact in his response. Thus, Defendant's statements of fact that are properly supported by citations to the record are deemed admitted. *See* M.D.Ga. L.R. 56 ("All material facts contained in the moving party's statement which are not specifically controverted by specific citation to the record shall be deemed to have been admitted, unless otherwise inappropriate.")

2

50). Danny Carter, a supervisor, and Billy Stellar, a foreman, would also operate the machines when necessary. (Pace Dep., pp. 48-50). Plaintiff is African-American, and all of the other machine operators are Caucasian. (Pace Dep., pp. 51-52).

Plaintiff worked the second shift, which ran from 4:00 p.m. until 2:00 a.m. (Pace Dep., p. 39). While working for Defendant, Plaintiff kept a journal, which he used to document what occurred during his shifts. (Pace Dep., p. 52).

On December 3, 2007, the plasma machine stopped working while it was being operated by Plaintiff. Plaintiff was unable to determine why the machine was not working. (Pace Dep., pp. 76-77, Ex. D-1). On January 7, 2008, the machine again stopped working while it was being operated by Plaintiff. He could not figure out the reason why the machine would not work. (Pace Dep., pp. 78-79, Ex. D-2).

Despite being instructed to perform "dry runs" before using the plasma machine, on January 18, 2008, Plaintiff failed to perform a dry run and his failure to do so resulted in a component being cut a quarter inch shorter than specified. (Pace Dep., pp. 82-85, Ex. D-3). Then on January 23, 2008, while using the plasma machine, Plaintiff cut a component incorrectly and the component had to be discarded. (Pace Dep., pp. 87-88, Ex. D-4).

On January 28, 2008, the plasma machine Plaintiff was using to cut a metal plate caused the plate to bubble, and as a result, the machine was unable to cut through the plate. (Pace Dep., p. 92, Ex. D-5). A plasma operator's failure to use the correct module will cause metal to bubble. (Pace Dep., pp. 92-93). Plaintiff had

another problem with metal bubbling on February 1, 2008, and the plasma machine stopped working. (Pace Dep., p. 96, Ex. D-6).

On January 30, 2008, Plaintiff had problems with the punch marker, which is used to cut holes for the placement of screws. (Pace Dep., pp. 74-75, Ex. D-5). He again had problems with the punch marker on January 31 and February 11, 2008. (Pace Dep., pp. 95-96, 101-102, Exs. D-6, D-7). On the latter date, the plasma machine stopped working. Plaintiff does not know what caused the machine to stop working, and he was unable to correct the problem. (Pace Dep., pp. 101-102, Ex. D-7).

On February 21, 2008, Danny Carter, Plaintiff's supervisor, issued an Employee Warning Report to Plaintiff because Plaintiff's carelessness in the operation of the plasma machine resulted in the waste of materials. (Affidavit of Scott Hobbs, ¶¶ 10-11, Ex. A; Pace Dep., pp. 102-103). The Employee Warning Report notified Plaintiff that immediate improvement was required, and that failure to improve would result in suspension. (Hobbs Aff., ¶ 11, Ex. A). On the evening of February 26, or the morning of February 27, 2008, Plaintiff "crashed" the plasma machine. (Pace Dep., p. 105, Ex. D-8; Hobbs Aff., ¶ 12). Plaintiff does not know what caused the malfunction. (Pace Dep., p. 105). Because of the problem Plaintiff had with the plasma machine on February 26 or 27, Plaintiff was suspended by Operations Manager Scott Hobbs, who is Caucasian, for three days. (Hobbs Aff., ¶ 12). Plaintiff received an Employee Warning Report on February 27, 2008, which

4

notified Plaintiff that he was being suspended because of his continued carelessness. (Hobbs Aff., ¶ 27, Ex. B). According to Hobbs, he suspended Plaintiff because the prior warnings Plaintiff had received proved to be ineffective, and because Plaintiff had already been informed that he would be suspended if his performance did not improve. (Hobbs Aff., ¶ 13).

Plaintiff returned to work, and on March 12, 2008, while Plaintiff was operating the plasma machine, it "sparked fire" from the electrical box. (Pace Dep., pp. 121-122, Ex. D-9). Plaintiff had never before seen the machine spark, and had never heard anyone else report that the machine had sparked. He does not know what caused the machine to spark. (Pace Dep., p. 123).

On both March 17 and March 31, 2008, the plasma machine malfunctioned while being operated by Plaintiff. (Pace Dep., pp. 124-125, Exs. D-9, D-10). Plaintiff does not know what caused the machine to malfunction on those two dates, and was unable to fix the problem. (Pace Dep., p. 124). Plaintiff again had difficulty with the plasma machine on April 14, 2008. (Pace Dep., pp. 129-130, Ex. D-12). Because of Plaintiff's continued difficulty with the plasma machine, on April 18, he was transferred to the drill press. (Pace Dep., pp. 130-131, Hobbs Aff., ¶ 14).

On April 28, 2008, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Pace Dep., Ex. D-19), claiming discrimination on the basis of race. Plaintiff received his Notice of Right to Sue letter

from the EEOC on July 16, 2010, and filed his complaint with this Court on October 8, 2010.

In his complaint, Plaintiff contends that he was discriminated against based on his sex and race. (Doc. 1).[2] He states that his February 2008 suspension and April 2008 transfer to another department were discriminatory in nature. (Doc. 1). Further, he contends that he was disciplined but Caucasian plasma machine operators were not disciplined for the same offense. (Doc. 1). Finally, Plaintiff claims that his supervisor, Danny Carter, who is white, was intimidated and treated Plaintiff differently because Plaintiff is black. (Doc. 1; Pace Dep., pp. 142-43, 152-53).

### III.  ANALYSIS

#### A.  Summary Judgment Standard

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material facts and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "A factual dispute is genuine only if 'a reasonable jury could

---

[2] Plaintiff testified in his deposition that he is not claiming any discrimination based on sex. A review of the record and evidence in the case does not support a sex discrimination claim, as there is no evidence that a similarly situated female was treated more favorably. Therefore, the Court will consider the merits of Plaintiff's race discrimination claim only. The sex discrimination claim included in Plaintiff's complaint is dismissed.

return a verdict for the nonmoving party.'" Info. Sys. & Networks Corp. v. City of Atlanta, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991)). The burden rests with the moving party to prove that no genuine issue of material fact exists. Id. at 1224. The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor." Id.

### B. Title VII

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). A prima facie claim of discrimination can be established through direct evidence, circumstantial evidence, or statistical proof. Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). Plaintiff has not introduced any direct evidence or statistical proof of racial discrimination, but relies on circumstantial evidence. When a plaintiff relies on circumstantial evidence, the court evaluates whether summary judgment is appropriate using the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973). EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). To establish a prima facie case of racial discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he was subjected to adverse employment action; (3) his employer treated similarly situated employees outside of his class more favorably;

and (4) he was qualified to do the job. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008). If the plaintiff makes a prima facie case, the burden shifts to the defendant to produce a legitimate, non-discriminatory reason for its employment action. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). If the defendant produces a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to prove that the reason provided by the defendant is a pretext for unlawful discrimination. Id.

### a. February 2008 suspension

The Court will first consider Plaintiff's claim that his February 2008 suspension constituted an act of discrimination. Defendant argues that it is entitled to summary judgment on the suspension claim because (1) Plaintiff cannot state a prima facie case of discrimination; and (2) there was a legitimate, non-discriminatory reason for suspending Plaintiff.

Defendant does not dispute the first, second, and fourth elements of the prima facie test. Thus, the third element is the only one at issue. Defendant contends there is no evidence that Plaintiff was treated differently than a comparable white co-worker. "When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." Burke-Fowler, 447 F.3d at 1323 (quotation omitted). "When making that determination, we require that the quantity and quality of the comparator's

8

misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (quotation, quotation marks, and alteration omitted).

The burden of showing that a similarly situated employee was treated more favorably is on Plaintiff. It is Plaintiff's responsibility "to show a similarity between [his] conduct and that of white employees who were treated differently and not on [the defendant] to disprove their similarity." Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) (quotation and citation omitted). Plaintiff has not identified any comparators by name in either his complaint or response to Defendant's motion. At his deposition, Plaintiff stated that on one occasion, John Benefield, who is white, caused a plasma machine to be down for three days, but was not written up or suspended. (Pace Dep., pp. 98-99). Plaintiff testified that Lloyd Rogers, a white male, one time drilled the wrong size holes in a piece of plate metal, but was not disciplined. (Pace Dep., pp. 139-40). Plaintiff also testified that Kyle Hiers, who is white, cut a metal plate the wrong size but was not disciplined. (Pace Dep., pp. 140-41). Finally, Plaintiff testified that Danny Thomas, a white male, "wrecked the machine" and was not disciplined. (Pace Dep., p. 141).

Defendant asserts that none of the other plasma machine operators are similarly situated, as none had the same poor job performance Plaintiff did. Defendant points out that in the approximately nine weeks between December 3, 2007 and February 11, 2008, the plasma machine malfunctioned nine times while

Plaintiff was the operator. Further, after being warned he would be suspended if his performance did not immediately improve, Plaintiff crashed his machine five days later. Defendant states that Plaintiff cannot point to a white machine operator whose job performance was similar to Plaintiff's but was not suspended. Defendant notes that John Benefield, the only operator who received a warning for carelessness similar to the one received by Plaintiff, did in fact improve in his performance of his job. Thus, Defendant concludes, Plaintiff is not identical to the alleged comparators, and therefore has not established a prima facie case of racial discrimination.

Plaintiff has offered no evidence to overcome Defendant's position that he is unable to establish a prima facie case. Plaintiff cannot stand on the allegations of his complaint in order to establish the elements of a prima facie case of racial discrimination. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548 (1986) (Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") Plaintiff has provided no evidence that the Caucasian plasma machine operators were subjected to more favorable treatment despite their commission of similar conduct. This means Plaintiff has failed to state a prima facie case of racial discrimination. His Title VII claim relating to his suspension is dismissed.

In any event, Defendant has provided the Court with a legitimate, non-discriminatory reason for Plaintiff's suspension, namely Plaintiff's poor job

10

performance and failure to improve. Where a defendant offers a legitimate, non-discriminatory basis for a disciplinary action, the plaintiff must show pretext. This means the plaintiff must reveal "'such weaknesses, implausibilities, inconsistencies, incoherences or contradictions' in the employer's reasons for its actions that a reasonable fact finder could find them unworthy of credence.'" Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation omitted). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163 (11th Cir. 2006). Plaintiff has not addressed pretext and has submitted no evidence to rebut Defendant's legitimate ground for the suspension. Because Plaintiff has not shown the proffered reason was false and that discrimination was the real reason behind his suspension, his Title VII claim as to the suspension fails. Accordingly, Defendant's summary judgment motion is granted on Plaintiff's suspension claim.

    **b.**     **April 2008 transfer**

Plaintiff also contends that his transfer from plasma machine operator to drill press operator in April of 2008 was an act of discrimination. Defendant argues that it is entitled to summary judgment on the transfer claim because (1) the transfer did not constitute an adverse employment action; and (2) there was a legitimate, non-discriminatory reason for the transfer.

A plaintiff suing under Title VII must show that he was subjected to an adverse employment action. Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010). To prove an adverse employment action, an employee must show "a serious and material change in the terms, conditions, or privileges of employment." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1239 (11th Cir. 2001). The employment action must be materially adverse as viewed by a reasonable person in the circumstances. The employee's subjective view of the significance and adversity of the employer's action is not controlling. Id.

An adverse employment action is a "significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits." Webb-Edwards v. Orange County Sheriff's Office, 525 F.3d 1013, 1031 (11th Cir. 2008) (quoting Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761, 118 S.Ct. 2257 (1998)). An involuntary transfer to a different position may be an adverse employment action if it "involves a reduction in pay, prestige, or responsibility." Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000).

While Plaintiff's transfer appears to have been involuntary, he has not shown that the transfer was materially adverse as viewed by a reasonable person. The record evidence shows that Plaintiff's rate of pay remained the same following the transfer. (Hobbs Aff., ¶ 15). Plaintiff's job responsibilities were the same, as he was still engaged in the fabrication of components used to manufacture boilers. (Pace

Dep., p. 131). Further, there is no evidence plasma machine operators were held in higher regard than drill press operators, and in fact, the work of the drill press operators was just as important to the manufacturing process. (Hobbs Aff., ¶ 15). Plaintiff has pointed the Court to no evidence that shows Plaintiff's transfer was an adverse employment action. Because the Court finds that the transfer did not constitute an adverse employment action, it is not necessary to address whether there was a non-discriminatory reason for the transfer. Plaintiff's discrimination claim as to the transfer fails, and Defendant is entitled to summary judgment on that issue.

## IV.   CONCLUSION

For the reasons discussed above, Defendant is entitled to summary judgment on Plaintiff's Title VII claims. Defendant's Motion for Summary Judgment (Doc. 43) is granted. The Clerk of Court is directed to close this case.

**SO ORDERED**, this the 17th day of October, 2011.

*s/Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

mbh